AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   24mj0382 |
| Purple iPhone Cellular Phone Case Number: SYS-24-02-0096 ("Target Device") | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8, USC sec. 1324 | Bringing in unlawful alien without presentation |

The application is based on these facts:
See Attached Affidavit of CBP Enforcement Officer Ramon A. Galindo, U.S. Customs and Border Protection, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ramon A. Galindo, U.S. Customs and Border Protection
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 02/05/2024 _____

_____
*Judge's signature*

City and state: San Diego, California

Hon. STEVE B. CHU, U.S. Magistrate Judge
*Printed name and title*

1

## ATTACHMENT A

2

## PROPERTY TO BE SEARCHED

3

4   The following property is to be searched:

5              Purple iPhone Cellular Phone
             Case Number:  SYS-24-02-0096
6
             ("**Target Device**")
7
**Target Device** is currently in the custody of the Department of Homeland Security,
8   Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

9

10

11

12

13

14

15

16

17

18

19

20

21

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 05, 2024 to February 03, 2024:

a.  tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.  tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.  tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.

## AFFIDAVIT

I, Ramon A. Galindo, being duly sworn, hereby state as follows:

### INTRODUCTION

1.     I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

> Purple iPhone Cellular Phone
> Case Number: SYS-24-02-0096
> ("**Target Device**")

the ("Target Device"), as further described in Attachment A and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.     The requested warrant relates to the investigation and prosecution of Esmeralda BRICENO (D1), for bringing in unlawful alien without presentation. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

3.     The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

### TRAINING AND EXPERIENCE

4.     I have been employed by U.S. Customs and Border Protection since 2003 and am currently assigned to the San Ysidro Criminal Enforcement Unit. I graduated from the

1

CBP Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5.     My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6.     During my tenure as a CBP Officer, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning

2

accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8.      The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States.  These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.  It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9.      Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as

3

1  emails, text messages, chats and chat logs from various third-party applications,
2  photographs, audio files, videos, and location data. In particular, in my experience and
   consultation with law enforcement officers experienced in alien smuggling investigations,
3  I am aware that individuals engaged in alien smuggling may store photos and videos on
4  their cell phones that reflect or show co-conspirators and associates engaged in alien
5  smuggling, as well as images and videos with geo-location data identifying alien smuggling
   transportation routes, and communications to and from recruiters and organizers.

6        10.    This information can be stored within disks, memory cards, deleted data,
7  remnant data, slack space, and temporary or permanent files contained on or in the cellular
8  telephone. Specifically, searches of cellular telephones may yield evidence:

9        a.    tending to indicate efforts to smuggle aliens from Mexico into the United
                States;

10       b.    tending to identify accounts, facilities, storage devices, and/or services–such
11             as email addresses, IP addresses, and phone numbers–used to facilitate alien
                smuggling and transportation of smuggled aliens;

12       c.    tending to identify co-conspirators, criminal associates, or others involved in
13             alien smuggling, or transportation of smuggled aliens;

14       d.    tending to identify travel to or presence at locations involved in the smuggling,
15             transportation, or harboring of illegal aliens, such as stash houses, load houses,
                or delivery points;

16       e.    tending to identify the user of, or persons with control over or access to, the
17             **Target Device**; and/or

18       f.    tending to place in context, identify the creator or recipient of, or establish the
19             time of creation or receipt of communications, records, or data involved in the
                activities described above.

20                                               4
21

1

**FACTS SUPPORTING PROBABLE CAUSE**

2     11.    On February 3, 2024, at approximately 4:53 A.M., Esmeralda BRICENO
(D1), a United States Citizen, applied for admission into the United States from Mexico
3
via the Otay Mesa, California Port of Entry vehicle primary lanes as the driver of a gray
4     Mazda CX5 bearing California license plates. D1 was accompanied by her four (4)
5     children: Yvonne Araceli ZAMARRIPA (D2), minor children M.E.M.B., L.A.G.B., and
J.A.V.B.. D2 was the front passenger in the vehicle and the three minor children were in
6
the rear passenger seat, the two youngest minors were in their respective car seats. Upon
7     inspection before a United States Customs and Border Protection (CBP) Officer, D1
      presented a United States passport card as her entry document and presented United States
8
passports for her four children. D1 stated they were traveling to San Bernardino, California
9     with nothing to declare from Mexico.

10     12.    The CBP Officer conducted a cursory inspection of the vehicle and discovered
      a red blanket between the two front seats and rear passenger seats of the vehicle. CBP
11
Officer uncovered the blanket and discovered a person laying on the vehicle floor. CBP
12     Officer used his hand-held radio and requested officer assistance. D1, D2, and vehicle
13     occupants were escorted to the security office while the vehicle was driven to secondary
      for further inspection.
14

15     13.    In Secondary, CBP Officers responded, assisted and removed one individual
      male from in between the front and passenger seats. The adult male was identified as Efren
16     Fredy MONTERO-Rosales and determined to be a citizen of Mexico without documents
      to enter, reside or pass through the United States. MONTERO is being held as a Material
17
Witness.

18     14.    At approximately 8:58 A.M., During a video-recorded interview, Material
19     Witness admitted to being a citizen of Mexico without lawful documents to enter the
20     United States. Material Witness stated he made his own smuggling arrangements via

5

21

telephone with D1 and was going to pay $8,000 U.S. Dollars upon successful entry into the United States. Material Witness admitted he was going to Santa Paula, California to seek employment. Material Witness stated D2 and the vehicle passengers picked him up in the morning. Material Witness claims he saw D2 removed two of the minors from the rear passenger seats and lured them away while he went inside the vehicle to hide under the blanket. Material Witness stated someone then adjusted and concealed him under a blanket. Material Witness claimed D1 advised him to remain silent, because they were about to cross the border for inspection twenty minutes before they were apprehended by CBP.

15.    At approximately 10:04 A.M., D2 was advised of her Miranda Rights and elected to give a statement. D2 claimed she was unaware anyone was concealed underneath a blanket in the seat behind her. D2 claimed they went to Mexico on Friday night, stayed at an aunt's house, and returned to the United States in the morning.

16.    The **Target Device** was discovered in the center console area under the radio, of the vehicle driven by Defendant Esmeralda BRICENO (D1). BRICENO (D1) acknowledged the **Target Device** as hers during her interview, and used the Target Device by unlocking it, and calling a relative. The **Target Device** was subsequently seized.

17.    Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the **Target Device** to communicate with others to further the smuggling of illegal aliens into the United States. Further, in my training and experience, alien smugglers may be involved in the planning and coordination of transporting and smuggling events in the days

6

and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the aliens. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on January 05, 2024, up to and including February 03, 2024.

## METHODOLOGY

18.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones, tablets, and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored

7

that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19.     Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

21.     Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//
//
//
//
//
//
//
//
//
//

8

## CONCLUSION

22.    Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

23.    Because the **Target Device** was seized at the time of BRICENO's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from January 05, 2024, through February 03, 2024.

24.    Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.


Ramon A. Galindo, CBP Enforcement Officer

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 05th day of February, 2024.


HON. STEVE B. CHU
United States Magistrate Judge

9